## FRANCIS v. REEVES.

(Filed December 17, 1904).

1. EXECUTORS AND ADMINISTRATORS—*Purchasers for Value—Notice—Descent and Distribution—Debts of Decedent—The Code, sec. 1442.*

　A purchaser for value of the lands of a decedent after two years from his death takes a good title as against creditors if such purchaser had no notice.

2. HUSBAND AND WIFE—*Agency—Presumptions.*

　No presumption arises from the relationship of husband and wife that the husband is the agent of his wife.

3. AGENCY—*Evidence—Sufficiency—Husband and Wife.*

　The evidence in this case is not sufficient to show that a husband was agent for his wife in the examination of title to land conveyed to her by a deed of trust to secure a loan to a third person.

ACTION by T. L. Francis against W. T. Reeves and others, heard by *Judge E. B. Jones,* and a jury, at May Term, 1904, of the Superior Court of HAYWOOD County.

This action is prosecuted by the plaintiff against the defendants W. T. Reeves, administrator of K. Reeves, deceased, V. S. Lusk and wife and others for the purpose of subjecting

certain lands, or the proceeds thereof, in the hands of Mrs. Lusk, to the payment of a judgment recovered against the defendant, administrator of K. Reeves.

The record shows that during the year 1886, A. J. Reeves executed his note to the plaintiff, with Kindred Reeves, as surety, for $650. Plaintiff endorsed the note to one Herren, who endorsed it to Garrett. The surety, K. Reeves, died in 1886, devising his property, including the real estate described in the complaint, to his three sons, W. T., A. J. and R. C. Reeves. Failing to name an executor W. T. Reeves was appointed administrator *c. t. a.* and qualified in 1888. He did not advertise for claims. In 1898 Garrett sued the principal, W. T. Reeves, administrator, and the plaintiff on his endorsement and recovered judgment. The other parties being insolvent the plaintiff paid the judgment and took an assignment thereof. He afterwards recovered judgment against W. T. Reeves, administrator, on said judgment.

George H. Smathers testified as follows: "That some time in 1890, A. J. Reeves applied to him to secure a loan and at the time he had a number of claims and judgments against the said Reeves for collection and was anxious to secure a loan. Reeves was to pay him $25 as a fee to secure the loan; that he went to Asheville and saw Colonel and Mrs. Lusk; went first to Colonel Lusk and he said the money belonged to his wife and that I would have to see her; that he did see her and she said that she had had trouble about loaning money and wanted to know if the loan was absolutely secure, and I told her that there would be no trouble about it, and she consented if the title should prove all right and that there was no incumbrance on the land. That he told Colonel and Mrs. Lusk that he would come back and look up the title and incumbrances, and Colonel Lusk was to come out afterwards and verify his examinations as to records, which he did before the trust deed was executed. That he had heard of the note testi-

fied to by Reeves and told A. J. Reeves that the matter would have to be settled, or rather, Reeves told him about the note at the time he applied for the loan. That Reeves told him that his father owed nothing at the time of his death but was surety on this note, but that the note had been adjusted, that it had been transferred from Francis to Herren and from Herren to Garrett and that Garrett had given it to W. T. Reeves' wife as an advancement, and that he told W. T. Reeves that it was not necessary to advertise if his father owed no debts, but told him the safer plan was to follow the law, and that he was sure that Reeves said there were no debts; that A. J. Reeves made the statement before the loan was made that the Francis note had been adjusted or had been given by Garrett to Reeves' wife. That his recollection is that the matter was discussed in the presence of Colonel Lusk. That he stated to Colonel Lusk that there were no debts against the estate but that K. Reeves had signed a note as surety, but that Garrett, the party holding the note, had given it to his daughter, wife of W. T. Reeves, and that after this conversation he and Colonel Lusk got down The Code and read section 1142, and afterwards Colonel Lusk considered the loan safe and the loan was made and I was named as trustee. Think that the loan was made about this time, but don't know whether the deed was drawn that day. That he said to Colonel Lusk "I suppose your wife wants you made trustee," and he said there was nothing said about it and as you will be here I guess you had better be trustee, and said that he would come out when I had prepared an abstract. That he thinks that he went to Asheville to deliver the notes and assure them that the loan was all right, and that he turned notes over to one or the other of them. That note was not paid at maturity, and sometime thereafter Mrs. Lusk instructed him to sell. Then Colonel Lusk told me to scare the interest out of him, that they did not want to sell the property. That Reeves

made some payments in checks and some in money and that he sent it in, but most of the payments were made directly to Colonel Lusk.    That after he received the notice to sell it was two or three years before the sale was made.    Colonel Lusk bid off the land for Mrs. Lusk and the deed was made to her. That Colonel Lusk told him that he was bidding it in for her, and that he knew that it was Mrs. Lusk's money, but after the land was sold and bought for Mrs. Lusk, he went to Asheville and had a talk with Mrs. Lusk and she said "You and the Colonel have got me in trouble again," and that he told her that he thought that the land was worth more than she gave." It was admitted that the deed was made to Smathers more than two years after the issuing of letters to W. T. Reeves on the estate of K. Reeves.

At the conclusion of the testimony his Honor, upon the defendant's motion, directed judgment of nonsuit.    Plaintiff excepted and appealed.

*Crawford* and *Hannah,* for the plaintiff.
*G. A. Shuford,* for the defendant.

CONNOR, J.    The excellent brief filed by counsel for appellant states that there are only two questions presented by the appeal:

1. Is there more than a scintilla of evidence that V. S. Lusk had knowledge of the note signed by K. Reeves, or information which put him upon enquiry as to the note at the time the deed of trust was executed and the loan made?

2. Is there more than a scintilla of evidence that V. S. Lusk was the agent of Mrs. Lusk in making the loan?

We concur with his Honor upon both questions.    The deed of trust was made more than two years after the grant of letters, and Mrs. Lusk made a loan upon the faith of the security.    She is a purchaser for value and her title is therefore good, "even as against creditors," unless she had notice of the

outstanding debt. The Code, sec. 1442. There is no sug-
-gestion that she had personal knowledge of any fact sufficient
to put her upon enquiry. Reversing the order of the ques-
tions as they are put in the brief, we enquire whether there is
any evidence that Mr. Lusk was her agent in the transaction.
The answer to this question depends upon the construction to
be placed on the testimony of Mr. Smathers. It is clear that
there was no express contract between Colonel Lusk and his
wife by which she made him her agent. It is conceded that
by her conduct, if unequivocal and understood by the parties,
that is, the wife and the other contracting party, that she
recognized him as her agent, she must be bound by his acts.
It would seem, however, that no presumption arises by rea-
son of the relationship that he is the agent of his wife. 1
Am. & Eng. Ency., 958. The agency must be proven.
Rhinehard on Agency, 51. "The husband may act as agent
of his wife, but in order to bind her he must previously be au-
thorized to do so or his act must with full knowledge be rati-
fied." *McLaren v. Hall,* 26 Iowa, 297. "The wife may
constitute the husband her agent, but to establish this the evi-
dence must be clear and satisfactory and sufficiently strong to
explain and remove the equivocal character in which she is
placed by reason of her relation of wife." *Rowell v. Klein,*
44 Ind., 290; 15 Am. Rep., 235. We do not find any evi-
dence that Mrs. Lusk appointed her husband agent to exam-
ine the title to the land. Mr. Smathers said to her that he
would go back to Waynesville and look up the title and en-
cumbrances, and Colonel Lusk was to come out afterwards
and verify his examination as to records, which he did before
the trust deed was executed. This appears to have been Mr.
Smathers' suggestion. The testimony falls short of evidence
proving an agency.

Affirmed.